# Rekiec, Appellant, v. Delaware and Hudson Company.

*Negligence—Master and servant—Mines and mining—Death—Fall of mine roof—Unexplained cause—Act of June 2, 1891, P. L. 176—Nonsuit.*

Where in an action for the death of plaintiffs' son, caused by the fall of coal from the roof of a mine alleged to have been in a dangerous condition, it appeared that the coal fell from a part of the roof which had been tested by the miners and which was regarded as safe, and where there was no evidence as to the cause of the fall of the coal, the trial judge made no error in entering a compulsory nonsuit and it was not material that the provisions of the Anthracite Mine Act of June 2, 1891, P. L. 176, might have been violated by defendant, where there was no evidence that such violations contributed to the accident.

Argued Jan. 4, 1916. Appeal, No. 185, Jan. T., 1916, by plaintiffs, from final order of C. P. No. 5, Philadelphia Co., June T., 1914, No. 859, refusing to take off nonsuit, in case of Piotr Rekiec and Jusefa Rekiec v. Delaware and Hudson Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for the death of plaintiffs' son.

The facts appear in the following statement of RALSTON, J., sur defendant's motion for a nonsuit:

So far as I can understand the testimony, the witnesses who were present in this part of the mine where the accident occurred testified that a part of the roof was dangerous, but that the part of the roof which fell and killed the boy was not dangerous in their opinion—that they had no knowledge that it was dangerous—that it fell, but for what reason they do not know. It further appears that the part of the roof which they regarded as dangerous had nothing to do with the accident, being

from ten to twelve feet away from where the accident occurred. Counsel for the plaintiff has endeavored to bring out certain testimony as to notices or failure to instruct the employees, but if there was failure, unless that failure to instruct them had something to do with accident it does not make the defendant liable.

In the first place, my difficulty in the case is that the statement of claim is so indefinite. So far as one gets any light on the case from the statement of claim, it amounts to no more than saying that the company failed to observe the mining laws and therefore it is responsible. When we come to the testimony of the witnesses, I adduced from it that the real point in the case is that there was a dangerous roof to this part of the chamber, and that the fall of the coal from this dangerous roof, which the company either knew was dangerous or ought to have known was dangerous, is the negligence alleged. That seems to be the theory of the case. When we come to the testimony of the witnesses which is offered to support that theory, we find that they do not testify that the dangerous part of the roof caused the injury, but, on the contrary, that the coal fell from the part of the roof which they regarded as safe—which they had tested with their drills and regarded as safe. Consequently, we have the fact that a part of the roof which the miners themselves, who had tested it, regarded as safe, fell upon this boy, the part which they did regard as dangerous being twelve to fifteen feet from where the miners were standing and not being the part that fell.

The part of the roof which the miners regarded as safe was, for some reason or other, unsafe; the miners did not know what made it so and apparently had no means of knowing.

The Court: Mr. Evans, I do not want to make any mistake in regard to the testimony in this case, as I have not had an opportunity to read it, and as it came from the witnesses there was so much that was irrelevant and

it was so difficult to understand, that I am not sure I have the right impression in regard to it.

Mr. Evans: Your honor has stated the testimony correctly. I have the testimony here of the first witness, who testified yesterday, and it is as your honor has stated it. I would refer to page 19 of the testimony.

The Court: As I view the case it was an unfortunate accident; no one knows the cause of it, and there appears to have been no negligence on the part of anybody, the miners or anybody else. It seems to have been one of those dreadful things that happen in mines owing probably to conditions of surrounding strata.

As I understood this testimony, the three surviving miners who were working in the chamber with this boy, testified that there was a weak spot in the roof which was not safe, but that they were not working under that weak spot but some twelve feet distant from it and that Paul, the deceased boy was working within two to five feet of them, and a portion of the roof which was regarded as safe by these miners, fell without any warning, upon the boy. I understand that they said in their testimony that the portion of the roof which fell and killed the boy they had regarded as safe.

Mr. Evans: Your honor has correctly stated the testimony.

The Court: Under that testimony I can see no negligence on the part of the company or anybody else. We have the positive testimony that the roof of the chamber at the place where it fell was safe and in fact one of the miners, I think testified that they had drilled in that very place for the purpose of seeing whether it was safe or—

Mr. Evans: Both of them said that.

The Court: In this case, of course, negligence must be shown. The company or individual operating a mine is not an insurer of the safety of the miners working there and in order that they may be held liable for an accident of this kind, negligence must be shown. As I

have said, if it were shown that the company had not observed any of the regulations of the mining laws, that would not make any difference in this case unless such omission had something to do with the accident. They might be fined or punished for violation of the mining laws, but in a case of this kind there must be some negligence shown upon the part of the defendant which caused the accident.

The trial judge entered a nonsuit, which the court in banc subsequently refused to take off. Plaintiffs appealed.

*Errors assigned* were rulings on evidence, and in refusing to take off the nonsuit.

*John N. Landberg,* for appellants.

*John Lewis Evans,* with him *W. J. Torrey,* for appellee.

PER CURIAM, March 6, 1916:

The correct conclusion of the learned trial judge in sustaining the motion for a nonsuit was that there was no evidence of negligence on the part of the appellee which caused a part of the mine roof to fall upon the appellants' son. The case as presented by them was one of an unfortunate accident from an unknown cause. The provisions of the Anthracite Mine Act of June 2, 1891, P. L. 176, may have been violated by the appellee, but it did not appear that its failure to observe them had caused or contributed to the accident.

Judgment affirmed.